Good morning, Your Honours. May it please the Court. Clara Perch along with my co-counsel Catherine Speckles for Appellant Everett Spillard are respectfully reserved three minutes for rebuttal. Keep an eye on the clock. In this case, there is no dispute that defendants gave Mr. Spillard psychiatric medication without his knowledge and without obtaining his informed consent. In doing so, defendants violated his right to avoid unwanted medication and, under the test established in Riggins v. Nevada, this violation is impermissible because defendants have failed to show both 1. an overriding justification for their conduct and 2. that the drug they gave to Mr. Spillard was medically appropriate. Now, rather than reaching the merits, the District Court found that defendants were entitled to qualified immunity. But both sides agree this was legal error and as this was the sole basis for granting summary judgment, this error alone compels reversal. The question now is, where do we go from here? Well, we see three paths. Option 1 is to reverse and remand for trial and is the option that we urge this Court to take. Defendants have made no showing whatsoever of an overriding justification. They've already had two chances at summary judgment and they should not be rewarded with a third. So the overriding justification, the whole Riggins framework, I mean, Riggins was a case about forcible medication over the defendant's objection and you don't have a forcible administration claim here, you have a lack of informed, he took it voluntarily, your claim is he just didn't have, he wasn't adequately informed of what it was, isn't that right? Yes, it's understated that Mr. Spillard did not know he was taking naltreptoline and antidepressant and he didn't receive, he didn't have the opportunity to provide his informed consent to take that medication. So what is the rule that, it's a little unclear to me, what is the rule that you think is reflected in the Constitution with respect to what sort of information needs to be provided to a prisoner about medication that he's being asked to take? I think it's a very fact-dependent situation, Judge Miller. A doctor would need to take into account the patient, their background, their understanding of medications and their medical history. In this case, while I'm no medical expert myself, I would say at least the doctors should have provided the name of the medication to Mr. Spillard that he was taking. They probably should have told him it's typically an antidepressant, a psychiatric medication, and that they were using it for off-label purposes to treat his diabetic neuropathy. And do you think it's enough that the level of information that's provided falls below the standard of care, or does there need to be a showing of deliberate indifference? Your Honor, a claim for deliberate indifference is separate from a claim for informed consent. I think there would be implications about standard of care under a deliberate indifference claim, but what is on appeal here is an informed consent claim. Right, but is this just a way to get around the deliberate indifference claim? No, Your Honor. The district court correctly recognized that there were several claims below that Mr. Spillard had alleged. But Mr. Spillard requested pain relief, and the defendants gave him what they thought would treat his symptoms. So if there's just a disagreement about the type of treatment, then why should there be a constitutional violation? Because, Your Honor, Harper, Riggins, Cruzan all recognize that there is a due process right to avoid unwanted administration of medication. And Benson recognizes that you have a right to receive information to exercise your rights intelligently. But those cases involved an unconscious person, people who objected and it was involuntarily administered, why would those apply here? This is something in between, isn't it? It's not quite squarely fitting in. Well, Your Honor, Johnson certainly involved an unconscious patient, but Benson did not. The patient there had talked with her doctors and still did not receive information about the drug that she was taking. Now, the outcome in that case was certainly different. Well, right, but different in a way that seems like it's maybe a problem for you, right? In Benson, the claim failed. And we said Benson could have asked more questions and the jail staff had no affirmative duty to volunteer information. I mean, isn't that exactly the situation that's here? There's no suggestion that he asked some questions and they refused to answer, right? No, no, Your Honor. There are two ways that Benson is right and stands for our case. First of all, it recognizes that there is a right to avoid unwanted administration of medication and that you have a right to information to exercise your rights intelligently. The second way it works for us is that it says on page 882, 844, and 885 that affirmatively objecting is not a dispositive factor under this framework and that a failure to refuse medication does not foreclose involuntariness. Now, there are three key ways that Benson is different from Mr. Spillard's case. First of all, Ms. Benson asserted that she was subject to a prison policy that compelled her to take all her medication or none at all. However, the prison policy was inserted into the record and it was clear that she was entitled to refuse specific drugs. In our case, Mr. Spillard has alleged that he is subject to a similar all-or-nothing policy as shown on ER 60. That is not in dispute or that has not been contested at this time and should be taken in the light most favorable to Mr. Spillard. And that amounts to a level of coercion considering he has to take several different types of medication to control his diabetes and his blood pressure. The second way that Benson is different is that Ms. Benson, the plaintiff, was a nurse with a different level of knowledge about her medications and so the court there found that that was a factor that indicated this wasn't a non-consensual administration. Can we go back to overriding justification? How does that apply? That seems to assume you're overriding a patient's objection. So how does that apply here to Mr. Spillard? Well, Your Honor, we think it applies because they administered psychiatric medication to him without his consent. The problem here is that there wasn't likely an overriding justification for not giving him the opportunity to provide his consent. Riggins establishes that in dangerous situations where an inmate is at a risk to himself and others, that can be an overriding justification. We see in Johnson that it's implied that when a plaintiff, a patient, is unconscious and subject to serious head trauma that that will be an overriding justification for administering medication to somebody without their consent. But here there is nothing like that. There was a non-consensual administration of medication, but no overriding justification to explain why they didn't even provide the name of the medication they were prescribing to Mr. Spillard. Do you want to save the rest of your time? Yes, Your Honor. Thank you. Ms. Becker. Good morning, and may it please the Court. My name is Allison Becker, and I'm here today on behalf of the defendants, FLEs, Nurse Lean, and Dr. Burleson. This case boils down to a single question. Was the administration of nortriptyline to Mr. Spillard involuntary? It wasn't. The district court made a specific finding to this effect on page 17 of the record. Judge Tiger found, quote, this was not a case where the medication was administered to him over his objections. The fact that the district court then went on to How could he object if he didn't even know he was being given the drug? Well, Your Honor, you've already noted the Benson case, and you're right. He couldn't provide informed consent. However, in Benson, this court specifically noted on page 882 of the opinion that Benson urges us to reach beyond Riggins and apply the doctrine of informed consent. There is not a constitutional right to informed consent. There is a constitutional right to be free from the involuntary administration of medication. The administration in this case But how can it be voluntary if you're not even aware of it? Well, Your Honor, the evidence in the record shows that Mr. Spillard had some awareness. He saw medical providers 57 times while he was at Humboldt County. He specifically requested a medication to treat his diabetic neuropathy and received nortriptyline in response. He at one point complained that he felt it wasn't working. The dosage was increased, and he never complained again. He was offered that medication 232 times from the time it was prescribed until the time he was transferred, or each day for 232 days, I should say. And he never took any affirmative act to object to or discontinue that medication. During his visits with medical providers, the medical records are clear that he was having detailed conversations with his providers about the state of his diabetes. He requested shoes for blisters on his feet. He talked about his blood sugar levels. They had many conversations about his diet and the particular timing of the administration of some of his medications. So all of the evidence put forth in the record supports that the administration of this medication was not involuntary. Was it medically appropriate? Yes, Your Honor, it was. And the declarations of the defense experts in this case go to that. This was a situation where, just like in Benson, he requested a treatment for physical pain and received a psychiatric medically appropriate medication to treat that physical pain. Well, that was for the pain in his feet and his toes. And this medicine, as prescribed, was off-label, right? Yes, Your Honor. So isn't that a fact question as to whether or not it is appropriate to use an off-label medicine that is a psychiatric medicine for purposes of treating the neuropathy in his feet? No, Your Honor, I don't think that's an issue of tribal fact under this framework. That would maybe come into play under the deliberate indifference claims, but those have already been decided by the district court and are not being appealed today. This is, I think you've correctly identified, simply a disagreement over the course of his medical care. And while that is routinely applied in the deliberate indifference framework, there is a decades-long line of cases from both this court and the Supreme Court that's cited on page 30 of our brief that holds explicitly that a disagreement over the course of medical treatment does not rise to the level of a constitutional violation. And the problem here, Your Honor, is that the cases cited by Mr. Spillard in support of his arguments on informed consent do not hold that there is a constitutional right to informed consent. But you have to know what you're being given to disagree, right? You can't even disagree. He asked for, what, gabapentin? Yes. That is what he specifically requested. He got a drug in response. Well, there's Mr. Spillard claims he asked for gabapentin. There's actually no citation in the record that indicates that. There is a citation that he came in with an active prescription for gabapentin. That is correct. There is also a note in the record that he was told that no one in the jail could receive gabapentin. But I did not see anything in the record that notes that he actively asked for gabapentin. And I did not ---- Well, why aren't these all factual material disputes, such that summary judgment was completely inappropriate? Because the ---- I mean, everything that you're raising just seems to support that there are factual material disputes here that would preclude summary judgment. Your Honor, when in response to the defendant's motion for summary judgment, Mr. Spillard offered no facts that he objected, that he couldn't ask questions, that he took any kind of affirmative act to discontinue the medication. And again, Your Honor, when he once complained about the medication where he stated that it wasn't working, the dose was increased and he never complained about the medication again. The record is absent of any facts that he experienced any kind of side effects from this medication. And you're saying Benson applies, right? Benson was a nurse, right? A highly educated, knowledgeable person about medications. There's nothing in the record, if we wanted to apply Benson, there's nothing in the record that would allow us to do that kind of weighing of Mr. Spillard's ability to ask questions, to be knowledgeable, right? The record is devoid of anything to do a Benson analysis. Well, I don't think the record is devoid of anything to do a Benson analysis. You are correct that Ms. Benson was a nurse and, therefore, differently situated than Mr. Spillard. And those were pretty prominent factors in that decision, right? They were prominent factors in the decision, but there were also many other factors that the court relied on. For example, Who has the burden of establishing the claim under Benson? Well, that's a different question than is actually before the court today, I think, Your Honor. Because in the trial- It was intended to be helpful. Yeah. Isn't that relevant to the assessment of motion for summary judgment when there isn't any evidence on the question? Yes. So the defendants put forth affirmative evidence in the record  In response to that, Mr. Spillard offered nothing to rebut those issues. Mr. Spillard claims that because the record is silent as to his ability to ask questions, as to his objection or anything like that, that he could testify to that if it was remanded at trial. However, he had multiple opportunities to raise those issues of fact. Let me ask you another question. You say that trial prejudice should be a requirement. And how would that apply to a convicted prisoner? So the issue here in Benson, it was also addressed, that because she was not actually prejudiced in her trial, there was no constitutional violation. Mr. Spillard also similarly has no evidence that this altered his mind in any way or caused him any prejudice in his trial. We don't believe that that is the most important factor here. But we did address it because it was analyzed in some of the other relevant cases. Can you tell me, I think under Benson, that you need to show that the medication was medically appropriate and justified under the circumstances. Can you tell me, have you given up on that second, justified by the circumstances? Because I don't think I found anything in the briefing that would indicate you even attempted to argue about that. Well, we did not argue the overriding justification piece of the Riggins test, and that's because we don't believe it applies because there was no objection. Was it medically justified and medically appropriate to treat his diabetic foot pain? Yes, and that is in the declarations of our defense experts. To treat them with an off-label drug that's never used other than by an emergency room physician in your record. I mean, aren't there fact questions? I guess that's what I'm getting at. No, Your Honor, I don't think there are fact questions because there was no other competent medical testimony in the record. And was he pro se? He was. But pro se plaintiffs are not held to it, not given any special deference on summary judgment or otherwise. And the court even solicited additional briefing on the issue. He submitted multiple verified complaints, declarations. There's nothing in there. So you agree that you can't get qualified immunity, right? Yes. And that is the basis on which the district court granted summary judgment. Yes. So at a minimum, that has to be reversed, correct? Correct, Your Honor. And where do you go from there? So the fact that the district court went on to make a ruling on qualified immunity grounds- Sui sponte. It wasn't briefed. It was never asserted by the defendants. Correct. Because it doesn't apply. We would argue that doesn't nullify the factual findings in the record. And if you look at page 16 and 17 of the court's order, there's multiple factual findings that have nothing to do with qualified immunity. And I see that my time is running out. If I could briefly conclude, we would argue that remand would just be a futile exercise. If it was remanded to the trial court, the district court could, in essence, just reissue its exact same order and delete the last two sentences before its conclusion on page 17 and reach the same conclusion on alternative grounds. And because this court is permitted to do the same, we would ask that you affirm the judgment on alternative grounds. Was the district court construing everything in your favor or in favor of the plaintiff? In favor of the plaintiff. Thank you, counsel. Thank you. Rebundal? Ms. Beckles? A few points, Your Honor. First, we would like to address the allegation that was made that this was not a voluntary administration. As Judge Koh correctly noted, how could he consent to this if he was not provided with the medication? There was some debate over whether the lack of voluntary or lack of affirmative consent rendered this not voluntary. This court has previously held, though, in the case of Williams, that it is not required. The specific way in which the medication is administered, whether that's a forcible injection or a mere compulsory policy, does not render this no longer involuntary. That's in footnote 10 from Williams. Furthermore, defendants even explicitly said he didn't provide informed consent. And the district court found the same thing. On page 3 of the district court's opinion, they explicitly said, Plaintiff was unaware that he had been prescribed or was taking nortriptyline and did not consent to being administered nortriptyline. That is an undisputed finding. He did not consent to taking nortriptyline. Furthermore, it was alleged that he never further complained about his situation, and this is also disproven by the record. On the record in, first of all, on page 168 of the record, a further appointment he was at actually says, Medical history includes peripheral neuropathy, which currently involves feet and ankles. That was from December of 2017. Over a month after he had been prescribed it, he was still complaining. Mr. Spillard also said in his own declarations that, quote, I never stopped complaining about the extreme pain I was in. That's on page 189. So he was continuing to dispute it. The fact that he had never complained, therefore, again, is simply not borne out by the record, and we must take Mr. Spillard's allegations as true. Finally, because Riggins does apply, given the lack of informed consent, we do, again, have to look, was there an overriding justification? And defendants have conceded, we did not argue the overriding justification. In the absence of that overriding justification, this judgment cannot stand under the standard put forth in Riggins. I see my time has elapsed. Thank you. And we do urge the court to reverse and remand. Thank you. Ms. Petsch and Ms. Speckles, you're representing Mr. Spillard pro bono by appointment to the court, and the court appreciates your service. We thank all counsel for their arguments this morning, and the case is submitted.
judges: MILLER, KOH, Molloy